Orville DANGERUD, Plaintiff and Appellee,

v.

Leo DOBESH, Defendant and Appellant.

Civ. No. 10612.

Supreme Court of North Dakota.

July 27, 1984.

Howe, Hardy, Galloway & Maus, Dickinson, for plaintiff and appellee; argued by Michael J. Maus, Dickinson.

T.L. Secrest, Hettinger, for defendant and appellant.

ERICKSTAD, Chief Justice.

Leo Dobesh appeals from a district court judgment entered in favor of Orville Dangerud in Dangerud's action to recover $24,000 paid to Dobesh pursuant to an oral agreement. We affirm.

On July 10, 1978, Dangerud began conducting a livestock auction business, Tri-State Auction Market, as a sole proprietorship in the same location as Hettinger Auction Market, Inc., had previously conducted

a similar business. Although Dangerud once owned stock in Hettinger Auction Market, Inc., he did not at the time of the transactions involved in this case.

Dangerud's amended complaint in this action alleged that he, through his agent, and Dobesh orally agreed that Dangerud would purchase and Dobesh would sell to Dangerud certain cattle [Hotchkiss cattle] for $24,000; that Dangerud paid Dobesh $24,000 for the purchase of the cattle; that Dobesh failed to deliver any cattle; and that Dobesh failed and refused to return the $24,000.

Dobesh's amended answer admitted the alleged oral agreement, failure to deliver any cattle, and failure to return the money. Dobesh alleged as an affirmative defense, however, that Dangerud failed to set forth the claim as a compulsory counterclaim in a previous action between the parties. Dobesh also alleged as an affirmative defense that Dangerud owed Dobesh $24,000 and that the $24,000 advanced to Dobesh by Dangerud was an accord and satisfaction of that debt.

Because of the defenses Dobesh has alleged in this case and the issues he has raised on appeal, it is necessary to set forth some of the facts developed in the previous action between these parties. In that suit, Dobesh alleged that on July 24, 1978, Dangerud gave Dobesh a note for $30,000, which was later replaced on September 10, 1979, with a note for $23,833.12,[1] which was unpaid, and demanded judgment for $23,833.12. Dangerud answered, alleging lack of consideration and mistake of fact.

During the trial, Dangerud offered in evidence a check payable to Dobesh for $24,000 issued by Kevin Dangerud, as the agent for Orville Dangerud doing business as Tri-State Auction Market. Evidence was also introduced to show that the purpose of the payment was for Dobesh to buy cattle, that Dobesh didn't deliver the cattle, and that Dobesh kept the money.

---

1. Dobesh testified that he "decided to take less money, knock commissions off and settle for this amount."

After trial, Dangerud moved to amend the pleadings to conform to the evidence and assert a counterclaim for recovery of the $24,000 paid to Dobesh to purchase cattle. In its memorandum opinion, the trial court (a judge other than the one who presided in the instant case) denied the motion and stated that "the court is not considering the check in its decision for it is not a proper counterclaim at this time."

The trial court in the previous case found that on May 22, 1978, Hettinger Auction Market, Inc., gave Dobesh a check for $76,-458.63 for livestock Dobesh shipped to Jacobson Livestock on or about May 20, 1978. The court also found that when the check was returned unpaid because of insufficient funds, Dobesh gave the check to Kevin Dangerud, acting for Orville Dangerud, in exchange for a note dated July 24, 1978, in the amount of $30,000, which was later exchanged for a note for $23,833.12 on September 10, 1979. The court concluded that the note for $23,833.12 was payment for an antecedent obligation and that Dobesh was entitled to a judgment for $23,-833.12.

After trial of the instant case, the trial court found facts sustaining the existence of the oral agreement alleged and Dobesh's inability to complete his part of the transaction. The court also determined that (1) at the time of the transaction, Dobesh was a creditor of Gerald Jacobson or a "corporation known as Hettinger Livestock Auction Market, Incorporated or a similar corporate name"; (2) Dobesh informed Kevin Dangerud that he would retain the $24,000 to apply to the debt owed to him by Hettinger Auction Market, Inc.; (3) Dobesh received no response from either Kevin or Orville to that proposal; (4) there was no mutual agreement that Dobesh could keep the $24,000; (5) there was no accord and satisfaction between the parties; and (6) the notes involved in the previous action were a separate transaction from the Hotchkiss cattle transaction. The court concluded that the claim represented by the $24,000 check was not a compulsory counterclaim.

Dobesh raises as issues whether or not (1) Dangerud was required to plead his claim for $24,000 as a compulsory counterclaim in the previous action; (2) Dangerud's claim for $24,000 was tried by the express or implied consent of the parties in the previous action; (3) Dangerud was required to appeal the denial of his motion to amend the pleadings in the previous action in order to avoid res judicata; and (4) there was an accord and satisfaction.

■ The first issue we address is whether or not Dangerud was required to plead his claim against Dobesh for $24,000 as a compulsory counterclaim in the previous action brought against him by Dobesh. Rule 13(a), N.D.R.Civ.P., provides in pertinent part:

"(a) *Compulsory Counterclaims.* A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it *arises out of the transaction or occurrence that is the subject matter of the opposing party's claim* and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction...." (Emphasis added.)

In construing the underscored language, we said in the syllabus in *Leo Lumber Company v. Williams*, 191 N.W.2d 573 (N.D.1971):

"3. In applying the Rules of Civil Procedure requiring a claim arising out of a 'transaction or occurrence that is the subject matter' of an action to be pleaded as a counterclaim, the phrase 'transaction or occurrence that is the subject matter' should be given a broad realistic interpretation in the interest of avoiding a multiplicity of suits.

"4. Any claim that is logically related to another claim that was the subject matter of a prior action 'arises out of the transaction or occurrence' constituting the subject matter of the prior action comes within the meaning of Rule 13(a), N.D.R.Civ.P., and, therefore, such claim must be pleaded as a compulsory counterclaim in the previous action."

At trial in the previous action between the parties, Dobesh testified that the $24,000 check given him by Kevin Dangerud in the Hotchkiss cattle transaction did not "have anything to do with the note ... in the sum of $30,000." Dobesh also testified that that $24,000 check did not "have anything to do with the note in the sum of $23,833.12 ...." The trial court stated in its memorandum opinion in the previous action that "the court is not considering the check in its decision for it is not a proper counterclaim at this time." The trial court in the instant action determined that the notes involved in the previous action were a separate transaction from the Hotchkiss cattle transaction involving the $24,000 check and that the claim represented by the $24,000 check was not a compulsory counterclaim.

We conclude that Dangerud was not required to plead his claim as a compulsory counterclaim in the previous action. Dangerud's claim for return of the $24,000 paid to Dobesh as part of the Hotchkiss cattle transaction was entirely separate from and did not arise out of the transaction or occurrence involving the note sued on by Dobesh in the previous action. Dangerud's claim for return of the $24,000 paid to Dobesh in September, 1978, in connection with the Hotchkiss cattle transaction, was not logically related to Dobesh's claim in the previous action. Nor was it related to any claim that Dobesh may have had against either Gerald Jacobson or Hettinger Auction Market, Inc.,[2] a corporation owned and managed by Gerald Jacobson, as a result of the issuance to him of a check by Hettinger Auction Market, Inc., in the amount of $76,458.63, which was returned unpaid because of insufficient funds.

**2.** No argument has been made that we should pierce the corporate veil of Hettinger Auction Market, Inc., as was done in *Schriock v. Schriock,* 128 N.W.2d 852 (N.D.1964). A corporation is distinct from its shareholders, directors, officers, and agents, who are generally not personally liable for their actions. *Airvator, Inc. v. Turtle Mountain Manufacturing Compa-*

■ Relying on Rule 15, N.D.R.Civ.P., and *Graven v. Backus,* 163 N.W.2d 320 (N.D.1968), Dobesh next asserts that the matter of the $24,000 check was tried by the express or implied consent of the parties. Rule 15(b), N.D.R.Civ.P., provides in pertinent part:

> *"(b) Amendments to Conform to the Evidence.* When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues...."

One purpose of the quoted portion of the rule is to allow evidence varying from pretrial pleadings to be introduced at trial with the consent of the parties and to provide a basis for disposition of the action. 6 Wright & Miller, *Federal Practice and Procedure:* Civil § 1491 (1971). The $24,000 check was introduced without objection at the trial in the previous action. It did not, however, provide a basis for the disposition of the action or affect the result of the trial of the previous action because the trial court refused to consider it.

Dobesh's reliance on *Graven v. Backus, supra,* is misplaced. In that case the issue, although not raised in the pleadings, to which unobjected-to evidence was addressed was determined by the court. In the previous action, in which Dobesh asserts that the matter of the $24,000 check was tried by the express or implied consent of the parties, the issue to which the $24,000 check was addressed was not determined. The trial court specifically denied

*ny,* 329 N.W.2d 596 (N.D.1983). "It is a commonplace that officers and directors are not personally liable for the ordinary debts of a corporation in the absence of fraud, other recognized extraordinary circumstances, or specific statutory provision imposing liability." *Danks v. Holland,* 246 N.W.2d 86, 90 (N.D.1976).

Dangerud's motion to amend the pleadings to assert a counterclaim and specifically stated that it "is not considering the check in its decision for it is not a proper counterclaim at this time." The issue of Dangerud's claim against Dobesh, represented by the $24,000 check, was not raised in the pleadings and was not tried and determined in the previous action.

With regard to the issue of whether or not Dangerud was required to appeal the denial of his motion to amend the pleadings in order to avoid res judicata, we have already noted that the issue of Dangerud's claim against Dobesh, represented by the $24,000 check, was not determined in the previous action. Without providing us with any citations to authorities or with any supportive reasoning in his brief, Dobesh has asserted that Dangerud's failure to appeal the trial court's denial of Dangerud's motion to amend and the court's decision not to consider the $24,000 check in the previous action requires that the matter be treated as res judicata. Without more, the assertion is without merit and we need not further address it.

Finally, Dobesh asserts that the parties entered into an accord and satisfaction. He relies on Kevin Dangerud's silence when Dobesh told him he was keeping the $24,000 to apply on the debt owed him for the $76,458.63 check issued to him by Hettinger Auction Market, Inc., that was returned unpaid.

We said in *Hall GMC, Inc. v. Crane Carrier Company*, 332 N.W.2d 54, 61 (N.D.1983):

"NDCC § 9–13–04 provides that an accord is 'an agreement to accept in extinction of an obligation something different from or less than that to which the person agreeing to accept is entitled.' NDCC § 9–13–05 provides that 'Acceptance by the creditor of the consideration of an accord extinguishes the obligation and is called satisfaction.' An essential element of an accord and satisfaction is mutual assent. *Frank v. Daimler-Benz, A.G., Stuttgart, West Germany*, 226 N.W.2d 143 (N.D.1975). The party who pleads accord and satisfaction has the burden of proof. *Id.* Whether or not there is an accord and satisfaction is basically treated as a question of fact. *Id.*"

See also, *Shirazi v. United Overseas, Inc.*, 354 N.W.2d 651 (N.D.1984); *Malarchick v. Pierce*, 264 N.W.2d 478 (N.D.1978), and *Hochstetler v. Graber*, 78 N.D. 90, 48 N.W.2d 15 (1951).

The trial court found that Kevin Dangerud did not respond to Dobesh's statement that he was going to keep the $24,000 and apply it to the Hettinger Auction Market, Inc., debt; that there was no mutual agreement that Dobesh could keep the $24,000; and that "there was no accord and satisfaction between the parties." We have reviewed the evidence in the record and have not been left with a definite and firm conviction that a mistake has been made. The trial court's finding that there was no accord and satisfaction is, therefore, not clearly erroneous under Rule 52(a), N.D.R. Civ.P.

For the reasons stated, the judgment is affirmed.

SAND, GIERKE and PEDERSON, JJ., concur.

VANDE WALLE, Justice, concurring specially.

For reasons stated below, I do not believe it is necessary to a disposition of this appeal that we reach the matter of whether or not the counterclaim was a compulsory counterclaim. However, because the majority opinion discusses that issue and because the opinion will undoubtedly be cited as precedent in the future on the issue of what constitutes a compulsory counterclaim I also express my views on that issue.

I believe the counterclaim was a compulsory counterclaim under Rule 13(a), N.D.R. Civ.P., and our construction thereof in *Leo Lumber Company v. Williams*, 191 N.W.2d 573 (N.D.1971). The original lawsuit was brought by Dobesh against Dan-

gerud to collect on a note given for a debt of the livestock auction market. At the time the case was tried, Dobesh had cashed and kept the proceeds of a check given him by Dangerud to buy cattle. The reason Dobesh kept the check is that he believed Dangerud, as the successor owner of the livestock company, owed him money in excess of the amount of the note on which Dobesh brought action. If we give the term "transaction or occurrence that is the subject matter" of an action a "broad realistic interpretation" with the purpose of avoiding a multiplicity of lawsuits, as taught by the syllabus in *Leo Lumber Company, supra,* Dangerud's counterclaim surely arose out of the transaction or occurrence that was the subject matter of the opposing party's claim. Dobesh's original action was brought to collect part of the debt he believed Dangerud owed him. He was withholding the money given to him to purchase cattle because he believed Dangerud owed him that money as part of that debt. That set of circumstances, in my estimation, constitutes a compulsory counterclaim within the meaning of Rule 13(a), N.D.R.Civ.P.

Having reached that conclusion, however, I nevertheless concur in the result reached in the majority opinion. The trial court in Dobesh's original action stated that "the Court is not considering the check in its decision for it is not a proper counterclaim *at this time."* [Emphasis supplied.] The statement of the trial court in that action may be open to construction, i.e., it might indicate that the counterclaim was not timely made, as opposed to not being a permissible counterclaim, or it might indicate that the court believed the counterclaim was not, in fact, a proper counterclaim under either subsection (a) or subsection (b) of Rule 13. The statements of the trial court preceding the quoted statement appear to me to indicate that the trial court believed the counterclaim was not permitted, rather than not timely made. Although I might disagree with that conclusion of the trial court in the original Dobesh action, it appears to me the determination was res judicata with regard to

that particular issue because Dobesh, perhaps naturally as he prevailed in the lawsuit, took no appeal therefrom, nor did Dangerud. Therefore, the conclusion that the counterclaim was not a proper counterclaim became the law of the case between these two parties. For that reason I do not believe it is necessary for us to determine that issue. I agree there was no accord and satisfaction and therefore agree that the judgment should be affirmed.