Abraham SHIRAZI and Sarver Houshavar, Plaintiffs and Appellees,

v.

UNITED OVERSEAS, INC., a corporation; and Action Movers, Inc., a corporation, Defendants and Appellants.

Civ. No. 10540.

Supreme Court of North Dakota.

July 18, 1984.

Chapman & Chapman, Bismarck, for plaintiffs and appellees; argued by Daniel J. Chapman, Bismarck.

Lundberg, Conmy, Nodland, Lucas & Schulz, Bismarck, for defendants and appellants; argued by A. William Lucas, Bismarck.

ERICKSTAD, Chief Justice.

United Overseas, Inc., and Action Movers,[1] Inc., have appealed from a judgment entered by the District Court of Burleigh County awarding Abraham Shirazi and Sarver Houshavar $4,000 plus interest and costs. We affirm.

In December 1974, Shirazi entered into an agreement with United Overseas, through its agent in Bismarck, Action Movers, for the transportation of household goods to his mother, Houshavar, in Tehran, Iran. A form entitled "Household Goods Descriptive Inventory," which described each article in the shipment, was signed by Shirazi and an employee of Action Movers. Arrangements were made for "door-to-door delivery" of the shipment.

Shirazi, on a standard form bill of lading, wrote the figure "4500.00" dollars to indicate the value of the shipment. Shirazi's signature appears immediately below the declaration of value. The contract reveals that Shirazi paid shipping charges totaling $1,829.52, which included a "valuation charge" of $135 computed on the basis of $3 for every $100 of the declared value of the shipment. Beneath Shirazi's signature appear the following provisions printed in red:

> "NOTICE—Unless a different value is declared above the shipper agrees that the liability of UNITED OVERSEAS INC. in case of loss or damage shall not exceed $.10 per lb. of the weight of each shipping package or unpacked article. The above is applicable only to liability incurred during land haul or storage in transit.

> "FURTHER NOTICE—In the event of loss or damage while shipment is at sea, or air, UNITED OVERSEAS INC. liability shall be restricted in accordance with the terms and provisions printed on the reverse side hereof under the general heading Part II, CARRIAGE BY SEA OR AIR."[2]

---

1. The summons and complaint, as well as the judgment in this case, designate "Action Movers, Inc.," as one of the corporate defendants. However, some of the documents received in evidence make reference to an "AAction Movers, Inc." rather than "Action Movers, Inc." None of the parties have raised an issue regarding this discrepancy, and therefore we assume that "Action Movers, Inc." and "AAction Movers, Inc." are one and the same.

2. No heading entitled "Part II, Carriage By Sea or Air" appears on the reverse side of the bill of lading.

Shirazi's shipment never reached its destination in Iran.

On June 19, 1975, Shirazi wrote a letter to the claims manager of United Overseas requesting $6,329.50, which represents the declared value plus shipping charges, and an explanation of the disappearance of the cargo. Shirazi received the following letter dated July 9, 1975, from the claims manager:

"We regret that previous to this time we have been unable to give you complete information with regard to your claim for the loss of your shipment by Arya National Shipping Lines.

"We refer you to United Overseas, Inc., bill of lading which shows the declared value of the entire shipment to be $4500.00. Immediately below are two notice clauses, the second of such clauses calls attention to the limitation of liability when loss or damage occurs to the shipment while at sea.

Also enclosed is a blank bill of lading form with the notice clauses printed in red ink and which sets out the terms and conditions on the reverse side of same.

"As the maxium [*sic*] liability of Arya National Shipping Lines, and hence United Overseas, Inc., for this loss under clause paramount (carriage of goods by sea act) is $500.00 per package.

"Enclosed is our check in the amount of $500.00 in settlement of your claim."

The "clause paramount" referred to in the letter appears in fine print on the reverse side of the bill of lading and provides:

"(1) CLAUSE PARAMOUNT. This contract incorporates and is subject to air cargo tariffs and the Carriage of Goods by Sea Act of the United States, approved April 16, 1936. United Overseas Inc. liabilities and responsibilities shall not exceed in any respect the minimum liability imposed on the carrier by or for which United Overseas Inc. may contract under said Carriage of Goods by Air or Sea Act. The provisions of said act shall govern prior to loading and subsequent to discharge at all times and places permitted by law, to the fullest extent permitted by law." [3]

Shirazi did not cash the $500 check but wrote a letter dated July 15, 1975, to Action Movers. The claims manager for United Overseas, who had been forwarded the letter, responded and denied the claim. Shirazi's attorney sent United Overseas a letter dated November 24, 1975, threatening legal action if the claim was not paid within 15 days. United Overseas responded in a letter dated December 4, 1975, again denying the claim and stating that Shirazi's goods were destroyed by fire in a government customs warehouse at Khorramshar, Iran. After receiving advice from legal counsel, Shirazi cashed the check in June 1976.

We were informed through the appellants' brief that suit was first filed in Federal court on October 11, 1976. It was dismissed for lack of jurisdiction on January 31, 1978. A second complaint was brought in Federal court on June 29, 1978,

---

**3.** The $500 liability limitation provision of the Carriage of Goods by Sea Act, 46 U.S.C. § 1300, *et seq.*, is found in 46 U.S.C. § 1304(5):

"(5) Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, *unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading.* This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier. [Emphasis added.]

"By agreement between the carrier, master, or agent of the carrier, and the shipper another maximum amount than that mentioned in this paragraph may be fixed: *Provided,* That such maximum shall not be less than the figure above named. In no event shall the carrier be liable for more than the amount of damage actually sustained. [Emphasis in original.]

"Neither the carrier nor the ship shall be responsible in any event for loss or damage to or in connection with the transportation of the goods if the nature or value thereof has been knowingly and fraudulently misstated by the shipper in the bill of lading."

which was subsequently dismissed with prejudice. An appeal resulted in the dismissal being changed from one with prejudice to one without prejudice. This suit seeking $10,145 in damages was instituted in State court on January 12, 1981. The defendants [hereinafter collectively referred to as United Overseas] claimed as affirmative defenses that the parties had entered into an accord and satisfaction and that a one-year limitation of actions provision contained on the reverse side of the bill of lading barred the action.[4] Following a bench trial, the court ruled in favor of the plaintiffs [hereinafter collectively referred to as Shirazi], awarding them $4,500 in damages and giving United Overseas $500 credit for the amount already paid to Shirazi.

The dispositive issues on this appeal are: (1) whether or not the trial court erred in finding that there was no accord and satisfaction between the parties; and (2) whether or not the district court erred in determining that the terms and conditions set forth on the reverse side of the bill of lading did not become a part of the contract between the parties.

### I

United Overseas contends that the parties entered into an accord and satisfaction when Shirazi cashed the $500 check which was accompanied by the letter stating that the check was "in settlement of your claim."

■ "Accord and satisfaction" has been defined by this Court as "a method of discharging a contract or cause of action by which the parties agree to give and accept something in settlement of a claim or demand of one against the other, where they thereafter perform such agreement." *Campbell v. Beaton*, 117 N.W.2d 849, 850 (N.D.1962). The "accord" is the agreement and the "satisfaction" is its execution or performance. *Beaton, supra;* §§ 9–13–04 and 9–13–05, N.D.C.C.

■ Accord and satisfaction is an affirmative defense and the party who pleads it has the burden of proof. *Frank v. Daimler-Benz, A.G., Stuttgart*, 226 N.W.2d 143 (N.D.1975); *Hochstetler v. Graber*, 78 N.D. 90, 48 N.W.2d 15 (1951). Mutual assent is an essential element of an accord and satisfaction. *Hall GMC, Inc. v. Crane Carrier Co.*, 332 N.W.2d 54 (N.D.1983); *Frank, supra; Hochstetler, supra.* Unless the evidence is such that reasonable men can draw but one conclusion therefrom, the question whether or not there has been an accord and satisfaction is a question of fact. *Hall GMC, Inc., supra; Malarchick v. Pierce*, 264 N.W.2d 478 (N.D.1978).

■ The trial court found that both parties agreed that the $500 payment was

---

4. Section 7, which appears in fine print on the reverse side of the bill of lading, provides:

"SECTION 7. As a condition precedent to recovery, a claim for any loss or damage, injury or delay, must be filed in writing with United Overseas Inc. within three (3) months after delivery to consignee as shown on face hereof, or in case of failure to make delivery, then within three (3) months after a reasonable time for delivery has elapsed, and suit must be instituted against carrier within one (1) year and one (1) day from date when notice in writing is given by United Overseas Inc. to the claimant that United Overseas Inc. has disallowed the claim or any part or parts thereof specified in the notice. Where a claim is not filed or suit is not instituted thereon in accordance with the foregoing provisions, United Overseas Inc. shall not be liable and such a claim will not be paid, provided, however, if the liability of United Overseas

Inc. occurs while the shipment is being transported by air or water the provisions of the following CLAUSE PARAMOUNT and particularly the time limitation in paragraph 4 thereof shall apply in lieu of the provisions concerning time limitations herein."

Paragraph 4 of the "clause paramount" provides:

"(4) Suit against carrier must be filed within the time specified in the air cargo tariffs and the Carriage of Goods by Sea Act which, for shipper's information only and without responsibility is stated to be one year from the time when the goods are delivered, or should have been delivered, at port of destination. No right given by said statutes is waived hereby."

The one-year limitation of actions provision in the Carriage of Goods by Sea Act is found at 46 U.S.C. § 1303(6).

owed, but that at no time did Shirazi agree to accept the $500 in lieu of his remaining claim against the defendants. The record reflects that an on-going controversy existed between the parties after Shirazi received the check and that Shirazi cashed the check only after being assured by his legal counsel that doing so would not jeopardize the remainder of his claim against the defendants. Shirazi testified that at the time he cashed the check, he still believed he had a claim against United Overseas. Although Shirazi ultimately cashed the check, all of Shirazi's actions in regard to this controversy reveal no intention to abandon his claim for the remainder of the declared value of the shipment.

Where a trial court chooses between two permissible views of the weight of the evidence, its decision on the matter is not clearly erroneous. *Bismarck Realty Company v. Folden*, 354 N.W.2d 636 (N.D. 1984); *Leno v. Ehli*, 339 N.W.2d 92 (N.D. 1983). Under the particular circumstances in this case, we cannot say that there was an accord and satisfaction as a matter of law or that the trial court's finding that the parties did not enter into an accord and satisfaction is clearly erroneous.

## II

United Overseas asserts that the trial court erred in determining that the terms and conditions located on the reverse side of the bill of lading did not become a part of the contract between the parties.[5]

The trial court relied on the general rule stated in 13 Am.Jur.2d *Carriers* § 274 (1964), that contract stipulations printed on the back of a receipt or bill of lading "will not be deemed to have been assented to, in the absence of proof of knowledge thereof." Because there was no evidence that Shirazi assented to the language on the reverse side of the bill of lading, the trial court ruled that those provisions "did not form a part of any contract or agreement

between the shipper and carrier." United Overseas asserts that in so holding the trial court failed to apply an exception to that rule, also found in 13 Am.Jur.2d *Carriers* § 274 (1964), that where a shipper accepts a receipt which states that its conditions are to be found on the back, "the shipper is held to have accepted and to be bound by the conditions there to be found." United Overseas claims that the contract terms and conditions were called to the attention of Shirazi in bold face print in three different places on the front of the bill of lading.

We deem it unnecessary to decide if the trial court's reasoning in this regard is correct because even if it were incorrect, we will not reverse a proper judgment on that basis. *Yon v. Great Western Development Corp.*, 340 N.W.2d 43 (N.D.1983); *Bohn v. Bohn Implement Co.*, 325 N.W.2d 281 (N.D.1982).

The following provision appears in bold print on the front of the bill of lading:

"IMPORTANT NOTICE

  \*     \*     \*     \*     \*     \*

"1. ALL TERMS WRITTEN, PRINTED, STAMPED OR TYPED ON THE FRONT OR BACK OF THIS FORM ARE AGREED TO BY THE FOLLOWING:"

This provision is immediately followed by a blank space. No signatures appear in this space.

The circumstances in this case are similar to those present in *Carriage Bags, Ltd. v. Aerolinas Argentinas*, 521 F.Supp. 1363 (D.C.Colo.1981). In that case, the plaintiff argued that a liability limitation condition contained on the back of a waybill was not applicable. The front of the waybill contained the following provision: "The shipper certifies that the particulars on the face hereof are corrects (sic) and agrees to the CONDITIONS ON REVERSE HEREOF." *Aerolinas Argentinas, supra*, 521

---

**5.** United Overseas has not asserted that the provisions of the Carriage of Goods by Sea Act apply *ex proprio vigore* [by their own force] in this case. Rather, United Overseas asserts in

this appeal that the provisions of the Act apply only by virtue of their incorporation on the reverse side of the bill of lading.

F.Supp. at 1365. As in the instant case, this statement was followed by a space which was left blank. Denying a summary judgment motion, the court stated:

"If plaintiff or its agent had signed the space on the front of the waybill agreeing to the conditions of contract on the back of the waybill, then [the limitation liability condition would apply]. Because this space is still blank, the inquiry must be deeper. The law governing bills of lading is instructive. Most courts have held that,

a shipper who receives a bill of lading without objection after an opportunity to inspect it, and permits the carrier to act on it by proceeding with the shipment, is presumed to have accepted it as correctly stating the contract and to have assented to its terms.

13 Am.Jur.2d, Carriers § 273 (1964). In this case, however, *the waybill did not state on its face that the conditions printed on the back were part of the contract; it only had a blank where the shipper could so agree.* It is therefore not obvious that plaintiff assented to the terms on the back.... [T]he conditions on the back of the waybill ... are incorporated into this contract only if defendant can prove that plaintiff or its agent assented to their inclusion. If defendant fails to meet this burden, then the liability-limitation provisions ... will not apply." *Aerolinas Argentinas, supra,* 521 F.Supp. at 1365–1366. [Footnotes omitted; emphasis added.]

The reasoning of the court in *Aerolinas Argentinas* is persuasive. Although Shirazi, a noncommercial shipper in this instance, signed the declaration of value provision, he did not sign in the blank space signifying that he agreed to the terms contained on the back of the form. The trial court specifically found that the language on the reverse side of the bill of lading was not called to Shirazi's attention, that he did not read it, and that he did not assent to it. These findings are supported by the evidence and are not clearly erroneous. The trial court did not err in determining that the provisions on the reverse side of the bill of lading did not become part of the contract between the parties.

Accordingly, the judgment is affirmed.

SAND, GIERKE, PEDERSON and VANDE WALLE, JJ., concur.