**John MOUGEY, Plaintiff and Appellee,**

v.

**Clifford SALZWEDEL, Defendant and Appellant.**

**Civ. No. 11258.**

Supreme Court of North Dakota.

March 2, 1987.

510

Don B. Eppler of Eppler & Leadbetter, Lisbon, for plaintiff and appellee.

Mark R. Fraase of Wegner, Fraase, Nordeng & Johnson, Fargo, for defendant and appellant.

VANDE WALLE, Justice.

Clifford Salzwedel appealed from the judgment and the amended judgment of the district court of Ransom County, which awarded John Mougey damages in the amount of $8,426.90 plus costs of $54.50. We affirm in part and remand for further findings.

John's wife, Renee, and Clifford had an extra-marital relationship which resulted in Renee's becoming pregnant. When the child (Jodi) was born, John had suspicions that she was not his child, but he was not sure and did not press the point with Renee. John provided support for Jodi from her birth on July 8, 1980, until the couple was divorced. He then provided support of $125 per month pursuant to a June 22, 1983, stipulation. After the divorce, the couple decided to resolve the issue of Jodi's paternity and obtained blood tests for that purpose. The results indicated that John was not Jodi's natural father. John then sought to amend the divorce judgment to reflect that he was not Jodi's father and to release him from the responsibility for Jodi's support. At the same time, John filed a petition to determine non-paternity. Jodi's guardian ad litem and John entered into a stipulation which released John from supporting Jodi after May of 1985. A judgment was entered based upon the stipulation and John was judicially declared to not be Jodi's father and he was released from all liability concerning her.

The State of North Dakota commenced proceedings which determined that Clifford was Jodi's father. Clifford was then ordered to pay support for Jodi. Upon learning that Clifford was paying support for Jodi, John commenced the action against Clifford out of which this appeal arises. John sought compensation from Clifford for support he provided Jodi prior to the court's determination that John was not her father. After a bench trial on the matter, judgment was entered against Clifford in the amount of $8,481.40.

█ Clifford raises several issues on this appeal. First, he claims that the trial court erred in rendering judgment in John's favor because his complaint failed to state a claim for which relief could be granted. It is clear that statutory authority exists for John's claim. Section 14–17–16(1), N.D. C.C., provides:

"If existence of the father and child relationship is declared, or paternity or a duty of support has been acknowledged or adjudicated under this chapter or under prior law, the obligation of the father may be enforced in the same or other proceedings by the mother, the child, the public authority that has furnished or may furnish the reasonable expenses of pregnancy, confinement, education, support, or funeral, or by any other person including a private agency, to the extent he has furnished or is furnishing these expenses."

Section 14–08.1–01, N.D.C.C., provides:

"A person legally responsible for the support of a child under the age of eigh-

teen years who is not subject to any subsisting court order for the support of the child and who fails to provide support, subsistence, education, or other necessary care for the child, regardless of whether the child is not or was not in destitute circumstances, is liable for the reasonable value of physical and custodial care or support which has been furnished to the child by any person, institution, agency, or county social service board. Any payment of public assistance money made to or for the benefit of any dependent child creates a presumption that such payment equals the reasonable value of physical and custodial care or support."

Section 14–08.1–02, N.D.C.C., provides that the obligation referred to in Section 14–08.1–01 may be asserted by a civil action. John Mougey has done just that. His complaint asks for reimbursement from Clifford for support John provided Jodi, and also for expenses incurred in proving he was not Jodi's father.

■ Clifford was judicially declared to be Jodi's father. As such, he is legally responsible for her support until she is eighteen years old. Sec. 14–09–08, N.D.C.C. Although a stepparent (as John was) may, in some circumstances be liable to support his spouse's (Renee's) dependent children, this liability does not affect the legal obligation of a natural parent (Clifford) to support his offspring. Sec. 14–09–09, N.D.C.C. Thus the obligation imposed upon Clifford to support Jodi remained intact whether or not John provided support for her.

■ Clifford claims that because John did not expect reimbursement when he provided support for Jodi, he cannot now demand to be reimbursed by Clifford. Clifford's argument fails for two reasons. First, the statute which sets forth the claim for relief under which John is proceeding has no requirement that John must have been expecting reimbursement. Second, as we will discuss later in this opinion, because John was unaware that he was not Jodi's father, he cannot be required to have expected reimbursement when providing support for Jodi. Public policy surely encourages a stepparent to provide support for the spouse's child, especially if he believes it is his natural child. But if at some time in the future he discovers that the child is not his, then, pursuant to Sections 14–08.1–01 and 14–17–16(1), N.D.C.C., he may be able to recover for the support he provided the child.

Because of the clear language of the statutes, John's complaint did state a claim for which relief can be granted.

■ Clifford next raises the issue of whether or not John's claim was barred by one of several defenses. Clifford seeks to benefit by the defenses of estoppel, waiver, laches, and accord and satisfaction. The applicability of the first three of these is ultimately determined on the basis of John's knowledge regarding whether or not he was Jodi's natural father. They have as a common element the knowledge of the person against whom the defense is being applied.[1] The trial court based its ruling regarding these three defenses on the element of knowledge. The trial court found that John was unaware that Jodi was not his child prior to receiving the results of the blood tests. The court also stated that even though John may have had suspicions, he had no duty to act on those suspicions during the marriage.[2] Although John did

---

1. See, e.g., *Cook v. Blood Systems, Inc.,* 320 N.W.2d 124 (N.D.1982) [court stated that one of the elements of estoppel was the knowledge of the party against whom the defense was being asserted]; *Loberg v. Alford,* 372 N.W.2d 912 (N.D.1985) [court stated that party against whom laches is sought to be invoked must have been aware of his rights and failed to assert them]; *Dolajak v. State Auto. & Cas. Underwriters,* 278 N.W.2d 373 (N.D.1979) [court stated that knowledge is essential element of waiver].

2. *But, cf., Clay v. Clay,* 397 N.W.2d 571 (Minn. App.1986) [where husband knew or should have known at the time of dissolution of the marriage that the child was not his, court held that husband was prevented by doctrine of res judicata from raising the issue of paternity in a post-decree motion to amend dissolution decree]. The amended divorce judgment—from which no appeal is taken—determining that

confront Renee with his doubts about Jodi's paternity, Renee would not confirm or deny John's allegations. We cannot hold that a suspicious husband must go farther than John did. After John and Renee were divorced, they did have blood tests taken to determine Jodi's paternity. Prior to receiving the results from these tests, John was unaware that he was not Jodi's father.

On the basis of John's lack of knowledge, the trial court determined that the defenses of estoppel, waiver, and laches were not applicable and thus did not bar John's claim. We agree with the trial court, and therefore affirm its holding that John's claim was not barred by estoppel, waiver, or laches.[3]

█ Clifford also asserts that John's claim was barred by accord and satisfaction. Accord and satisfaction is an affirmative defense, and therefore the party who pleads it—in this case, Clifford—has the burden of proof. *Shirazi v. United Overseas, Inc.*, 354 N.W.2d 651 (N.D.1984). Additionally, unless the evidence is of a nature that a reasonable person could draw but one conclusion, the question of whether or not there has been an accord and satisfaction is a question of fact. *Shirazi, supra.* Therefore, the trial court's finding that there was not an accord and satisfaction was a finding of fact subject to the clearly erroneous rule. *Shirazi, supra.*

█ An essential element of accord and satisfaction is an agreement evidencing the mutual assent of the parties. *Shirazi, supra; Hall GMC, Inc. v. Crane Carrier Co.*, 332 N.W.2d 54 (N.D.1983). The trial court held that the stipulation between John and Renee did not operate as an accord and satisfaction vis-à-vis John's claim against Clifford. The trial court based its holding on the fact that Clifford was not a party to the stipulation and thus he was not released from his obligation to John.

We stated in *Shirazi, supra*, 354 N.W.2d at 654:

" 'Accord and satisfaction' has been defined by this Court as 'a method of discharging a contract or cause of action by which the *parties agree to give and accept something in settlement of a claim or demand of one against the other*, where they thereafter perform such agreement.' *Campbell v. Beaton*, 117 N.W.2d 849, 850 (N.D.1962). The 'accord' is the agreement and the 'satisfaction' is its execution or performance. *Beaton, supra;* §§ 9–13–04 and 9–13–05, N.D.C.C." [Emphasis added.]

█ It is clear from the statutes and caselaw that the defense of accord and satisfaction contemplates the mutual assent of the parties to modify their rights and obligations regarding each other. When he signed the stipulation John was unaware that he was not Jodi's natural father, and in turn he was unaware that Clifford was Jodi's natural father. Thus John cannot be held to have agreed to relinquish his rights in regard to Clifford. Furthermore, we agree with the trial court that Clifford was not released from his obligation to John because Clifford was not a party to the stipulation. The relevant portion of the stipulation provides: "Each party hereby agrees ... that this property settlement and support agreement shall constitute the mutual release of each party

---

John is not Jodi's father is not before this court in this proceeding.

**3.** The dissent urges that we reverse because the trial court's finding of lack of knowledge was clearly erroneous. Presumably the dissent would require John to act as would any other person who has the same degree of knowledge. But we should not try this case anew on appeal and in a vacuum. The trial court in its findings recognized the realities of a situation such as that in which John found himself. Furthermore, although the dissent gives passing recog-

nition to the purpose of the statutes under which John claims relief, i.e., child support, it would force persons in John's position to act quickly to bring nonpaternity actions thus terminating that support. Although the interests cited by the dissent are significant [see, e.g., *Throndset v. J.R.*, 302 N.W.2d 769 (N.D.1981) ], the particular statutes which govern this case are economic in nature and terminating John's obligation to support Jodi as a result of forcing a speedy nonpaternity action would not be in Jodi's best economic interests.

hereto to the other of any claims for any present or future respective debts and obligations of each." The intent of the parties pursuant to this provision is clearly to release *each other*, and not unknown parties.

Therefore, we affirm the trial court's holding that John's claim was not barred by accord and satisfaction.

Clifford raises, as his next issue, whether or not the trial court applied an incorrect burden of proof regarding John's knowledge that Jodi was not his natural child. The trial court found that John was unaware he was not Jodi's father until after he received the results of the blood tests. The trial court also held that although John had suspicions regarding Jodi's paternity, he had no duty to resolve his doubts while he was married to Renee. The trial court based its holding on the premise that the law should encourage marriage, not divorce. Clifford asserts that the trial court was thereby requiring Clifford to prove his defenses by a level of proof beyond the preponderance level. But there is a difference between the level of proof required to establish a fact, and the existence of that fact. The trial court properly held that John's knowledge of Jodi's paternity is a critical element of Clifford's defenses. The trial court found that John was unaware that Jodi was not his natural child until he received the results of the blood tests. In essence, the trial court found that Clifford had not proven that John knew he was not Jodi's natural father. The court did not require Clifford to prove by a 100 percent certainty that John knew. Rather, the court required Clifford to prove by a preponderance of the evidence that John *knew*, as opposed to *suspected*, that Jodi was not his natural child. Therefore, the trial court acted properly in determining that Clifford had not proven that John knew Jodi was not his natural child.

Clifford also raises several issues regarding damages. First, he claims that the trial court's award of $3,600 for child support from July 9, 1980, to July 1, 1983, was not supported by the evidence. The court determined that $200 per month was a rea-sonable amount, and then awarded John one-half of that amount, apparently because Renee, as the natural mother, was also responsible for Jodi's support. Clifford asserts that John did not prove the actual amount spent to provide support for Jodi. Thus Clifford claims the trial court erred in awarding $3,600 for support from July of 1980 to July of 1983.

John testified that he provided Renee with approximately $200 per month. This amount was for groceries and household supplies. John also testified that he provided shelter, transportation, medicine, and health care, as well as meat and other supplies. Clifford did not offer any evidence to prove that the support provided by John had a value which was less than what the trial court ordered.

A trial court's determination of the amount of damages will not be set aside by this court unless it is clearly erroneous. *Jablonsky v. Klemm*, 377 N.W.2d 560 (N.D.1985). In view of John's testimony regarding the support he provided for Jodi, and Clifford's failure to offer any proof in an attempt to minimize the value placed on John's support, the trial court's award of $100 per month for Jodi's support while she lived with John was not clearly erroneous.

Clifford also raises as an issue whether the trial court erred in awarding John $500 for the provision of health insurance for Jodi. Clifford asserts that the cost of health insurance is not a necessity and therefore not recoverable, and, in any event, that the record does not support the award of $500.

As we have previously discussed, the trial court properly held that statutory authority existed for John's action under Sections 14–17–16 and 14–08.1, N.D.C.C. These sections provide for the recovery of the reasonable value of physical and custodial care or support which John provided for Jodi. The statutes seek to encourage people and agencies to provide for children by setting up a statutory scheme for recovery of the amount expended on their be-

half. In view of the public policy which encourages that children be properly cared for, we would be remiss in fulfilling our judicial responsibilities if we held that health insurance was not intended to be a recoverable expense pursuant to these statutes.

John offered proof on the cost of health insurance. Clifford makes much of the fact that John would have paid the same amount regardless of whether or not Jodi was covered. But it is not clear from the record that John would have spent as much because there apparently is a difference in the cost of health insurance for a family and for that of a single person plus a dependent. Moreover, regardless of whether or not John spent more to insure Jodi, he did provide a benefit for her; namely, health insurance. The statutory provisions clearly state that John is entitled to be reimbursed for the reasonable value of that benefit. In view of the evidence presented, the trial court's award of $500 for health insurance is not clearly erroneous.

■ Lastly, Clifford asserts that the trial court erred in awarding John the cost of attorney fees, costs, and expenses in John's action to establish his non-paternity. Clifford claims that if John wants to recover these costs, Clifford should have been made a party in the non-paternity action. Section 14–17–05(1)(b), N.D.C.C., provides, in pertinent part, that "After the presumption [of paternity] has been rebutted, paternity of the child by another man *may be determined in the same action, if he has been made a party.*" [Emphasis added.] Section 14–17–08, N.D.C.C., states that "The natural mother, each man presumed to be the father under section 14–17–04, and *each man alleged to be the natural father*, shall be made parties ..." [Emphasis added.] Additionally, Section 14–17–13(3) provides that "A man *who is identified* and is subject to the jurisdiction of the court shall be made a defendant in the action." [Emphasis added.] The portions of these statutes which we have emphasized make it clear that Clifford should

have been made a party to the non-paternity action if John was aware he was Jodi's father. It is clear that although John had suspicions about Renee's fidelity, he did not know or suspect that Clifford was the man with whom Renee had conceived Jodi. Thus John had no basis to make Clifford a party to the non-paternity action.

We again return to Section 14–17–16(1), N.D.C.C., which provides, in part, that:

"the obligation of the father may be enforced in the same [action to establish paternity] or other proceedings by the mother, the child, the public authority that has furnished or may furnish the reasonable expenses of pregnancy, confinement, education, support, or funeral, or by *any other person*, including a private agency, to the extent he has furnished or is furnishing these expenses." [Emphasis added.]

We also note Section 14–17–15, N.D.C.C., which provides, in part:

"The court may order reasonable fees of counsel, experts, and the child's guardian ad litem, and other costs of the action and pretrial proceedings, including blood tests, to be paid by the parties in proportions and at times determined by the court."

If Sections 14–17–16(1) and 14–17–15 are read together, as they must be, it is clear that the right to recover costs does not rest on who is a party to the original action to establish paternity or, as was the case here, non-paternity. Section 14–17–16(1) provides that the action for recovery of the reasonable value of support can be brought in the same action (paternity) or in other proceedings. Section 14–17–15 allows certain costs to be apportioned among the parties. We understand these sections to mean that certain costs can be awarded to the parties, regardless of whether or not they were parties in some other action. In other words, the court has the discretion to apportion the costs listed in Section 14–17–15 so long as the person who incurred the costs and the person who is determined to be at least partially responsible for the

costs are parties to the pending action in which the costs are apportioned.

Section 14–17–15 was adopted in North Dakota as part of the Uniform Parentage Act. The Commissioners' Comment relating to this section states that this section allows the court to apportion the cost of litigation among the parties. In view of the language of the statute and the Commissioners' Comment, it is clear that the costs which were awarded to John (attorney fees, guardian ad litem fees, and the cost of blood tests) are meant to be apportioned among the parties. Although that does not mean that all of these costs cannot be assessed against one of the parties, the reasons for such an apportionment should be set forth by the trial court. See, e.g., *Herzog v. Yuill,* 399 N.W.2d 287 (N.D. 1987) [Supreme Court must be able to discern trial court's reasoning to appropriately review the lower court's determination]. Because this was not done in the present case, we remand to the trial court for further proceedings to consider the apportionment of the costs referred to in Section 14–17–15.

For the reasons stated, we remand to the trial court for factual findings regarding the awarding of costs incurred by John in establishing his non-paternity. The trial court may make the necessary findings based upon the evidence already received, or if the trial court so determines it may hold a hearing to receive further evidence. In all other respects we affirm the decision of the trial court.

ERICKSTAD, C.J., and MESCHKE and GIERKE, JJ., concur.

LEVINE, Justice, concurring and dissenting.

I concur in that portion of the majority opinion remanding for a redetermination of costs and attorney's fees. I dissent from the affirmance of the remainder of the judgment and amended judgment. I would reverse and remand for additional findings by the trial court on the applicability of the defenses of estoppel, waiver and laches.

A third child was born to Renee in November 1982. Clifford was the father. In September 1982 Renee told John that the third child was not his. The trial court found that after Renee became pregnant with her third child in February 1982, John Mougey "felt ninety percent certain that he was not the father of Jodi Mougey." In my view, the only conclusion to be drawn from such a finding is that John had reasonable knowledge in February 1982 that he was not the father of Jodi so as to place him on inquiry. His failure to act on that knowledge for three years thereafter raises the issues of estoppel, waiver and laches as to his right to recover damages for those three years. Under the cases cited in footnote 1 of the majority opinion, the trial court should determine whether the elements of such defenses, other than knowledge, have been established.

It is, of course, evident that our concern is directed toward Jodi, not Clifford or John. The statutes under which John claims relief are intended to promote Jodi's welfare by enlarging the availability of resources to provide child support. They were not intended to indemnify a presumptive father who acquires reasonable knowledge of his non-paternity but for his own personal advantage (to gain custody of a child he fathered) undertakes no reasonable inquiry and does nothing to establish his non-paternity for three years.

I do not agree that expecting a man in John's position to act promptly undermines the policy of the law to foster marriage. Indeed, the trial court found that problems in this marriage preexisted Jodi's birth in 1980 and that the parties ceased living together in September of 1982. The only thing to be fostered by condoning John's vacillation and delay is the detriment to Jodi caused by the prolonged uncertainty of her status with John, the only man she considered to be her father. John's refusal to exercise visitation with Jodi following the parties' divorce in June of 1983 fortifies the finding that his knowledge of non-paternity far exceeded mere suspicion or speculation. Furthermore, the parties were divorced in June of 1983 so that

John's delay of one and a half years following the divorce is surely not justified by any policy favoring the encouragement of marriage.

I agree with the majority's analysis that the trial court's ruling that the defenses of estoppel, waiver and laches were not applicable was based on its finding that John lacked knowledge. Because I believe that finding by the trial court to be clearly erroneous, I would reverse the judgments and remand for additional findings on the applicability of the defenses. I therefore respectfully dissent.