# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2020 ND 125

In the Matter of the Estate of Geraldine Sande, Deceased

------------

Frederick Sande, Personal Representative
of the Estate of Geraldine Sande, deceased,                    Petitioner and Appellant

      v.

Paulette June Sande, Personal Representative
of the Estate of Philip James Sande aka
Philip Sande, deceased,                    Respondent, Third-Party Plaintiff,
                                                                            and Appellee

      and

Frederick Sande, individually,                    Third-Party Defendant and Appellant

## No. 20190171

Appeal from the District Court of Stark County, Southwest Judicial District, the Honorable Dann E. Greenwood, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Justice.

Matthew D. Kirschenmann, Fargo, ND, for petitioner, third-party defendant, and appellant.

Vince H. Ficek, Dickinson, ND, for respondent, third-party plaintiff, and appellee.

**VandeWalle, Justice.**

[¶1]   Fred Sande, the personal representative of the Estate of Geraldine Sande, appealed from a judgment distributing the estate.  We conclude the evidence supports the district court's findings, the court's finding that Fred Sande breached his fiduciary duty is not clearly erroneous, and the court did not abuse its discretion by denying Fred Sande's request for personal representative's fees and attorney's fees.  We affirm.

I

[¶2]   Geraldine Sande and her son, Philip Sande, owned Sande Music Company, a partnership.  Geraldine Sande owned 55 percent of the partnership and Philip Sande owned the remaining 45 percent.  In March 2010, Geraldine Sande and Philip Sande sold the company for $800,000, of which $600,000 was paid shortly after the sale and the remaining amount was to be paid in installments.  Philip Sande executed a promissory note in the amount of $55,000 in favor of Geraldine Sande.

[¶3]   Geraldine Sande died on October 17, 2012.  On November 2, 2012, Fred Sande, also a son of Geraldine Sande, was appointed the personal representative of Geraldine Sande's estate.  Philip Sande died on August 17, 2014, and his wife, Paulette Sande, was appointed the personal representative of his estate.  Philip Sande and his estate are hereinafter referred to as Philip Sande whether the reference is to Philip Sande while living or his estate as a party to this action.

[¶4]   On July 14, 2016, Fred Sande filed an inventory and appraisement of Geraldine Sande's estate, which included real property, Geraldine Sande's share of Sande Music sale proceeds, the $55,000 promissory note from Philip Sande, and other assets.  Philip Sande objected to the inventory and appraisement, demanded an accounting of the Estate, and requested the immediate return of any Estate assets.  Philip Sande alleged the Estate's real property was undervalued, Fred Sande removed assets from the real property,

1

Fred Sande conveyed the real property to himself and deprived Philip Sande of his interest in the property, and Fred Sande failed to pay rent for use of the Estate's real property while conducting business out of the property. Philip Sande also claimed that the value of the promissory note did not reflect payments that had been made and that there were no assets from the sale of Sande Music at the time of Geraldine Sande's death.

[¶5] In October 2017, Fred Sande petitioned for confirmation of the distribution plan. He requested attorney's fees, personal representative's fees, and fees for forensic accounting services from Eide Bailly, which he claimed were necessary to determine whether there were problems with the allocation of the sales proceeds for the sale of Sande Music. He claimed the forensic accounting report showed Philip Sande received more than his share of the funds from the sale of Sande Music. He also alleged no payments were ever made on the promissory note from Philip Sande to Geraldine Sande. He alleged Philip Sande had possession of Estate assets worth $466,950.26 and any distribution must reflect the disproportionate share Philip Sande received from Sande Music and the unpaid promissory note. Philip Sande answered and counterclaimed, alleging Fred Sande breached his fiduciary duty to the Estate and its beneficiaries.

[¶6] Philip Sande also brought a third-party complaint against Fred Sande, individually. Philip Sande claimed Fred Sande breached his fiduciary duty to the Estate and to Philip Sande. Philip Sande also alleged he entered into a partnership with Fred Sande, Philip-Frederick Enterprises, for the purpose of renting the real property Geraldine Sande owned at the time of her death, and he is entitled to half of the rents and profits from the relationship and half of the real property if the court determined the real property was an asset of the partnership.

[¶7] After a bench trial, the district court ordered distribution of the Estate but denied Fred Sande's petition for confirmation of distribution, awarded Fred Sande a portion of the attorney's fees he requested, found Fred Sande breached his fiduciary duty to Philip Sande, and awarded Philip Sande damages for the breach. The court found Geraldine Sande entered into an accord and

2

satisfaction for any funds Philip Sande may have owed her for the sale of Sande Music, Philip Sande paid Geraldine Sande for the $55,000 promissory note, and Geraldine Sande agreed all funds had been paid in full. The court also found a $90,000 check Philip Sande issued to Fred Sande after Geraldine Sande's death constituted payment in settlement of Fred Sande's interest in Geraldine Sande's estate.

[¶8] The district court found Fred Sande's actions as personal representative and his expenditure of attorney's fees did not benefit the Estate and were done primarily to benefit himself. The court found Fred Sande breached his fiduciary duty as personal representative, and Philip Sande was entitled to damages in the amount of half of the value of the real property. The court dismissed Philip Sande's claims for damages arising out of the operation of Philip-Frederick Enterprises, concluding the claims failed for lack of evidence. Judgment was entered.

## II

[¶9] Fred Sande argues the district court erred by raising and applying affirmative defenses that were not asserted or argued.

[¶10] Generally, a party must assert any affirmative defenses in responding to a pleading. N.D.R.Civ.P. 8(c)(1); *Smestad v. Harris*, 2011 ND 91, ¶ 9, 796 N.W.2d 662. Accord and satisfaction and waiver are affirmative defenses. N.D.R.Civ.P. 8(c)(1). An affirmative defense is waived if it is not pled. *Smestad*, at ¶ 9. However, this Court has recognized "when the court receives evidence on an unpled affirmative defense and considers that evidence in arriving at its decision, we consider the merits of the affirmative defense issue on appeal under the theory the issue was tried by the express or implied consent of the parties." *Johnson v. Mark*, 2013 ND 128, ¶ 16, 834 N.W.2d 291.

[¶11] Philip Sande pled various affirmative defenses, including accord and satisfaction and waiver, in his answer and amended answer to the petition for confirmation of the distribution plan. The affirmative defenses were also asserted in Philip Sande's pretrial and post-trial briefs, his proposed findings of fact and conclusions of law, and his proposed judgment. The affirmative

3

defenses were pled and were not waived. We conclude the district court did not err by applying the affirmative defenses in deciding the case.

## III

[¶12] Fred Sande argues the district court erred in finding his acceptance of $90,000 from Philip Sande was an accord and satisfaction of his share of Geraldine Sande's estate. He contends evidence established the payment was a capital contribution to Philip-Frederick Enterprises.

[¶13] A party asserting an affirmative defense has the burden of proving the defense. *Mougey v. Salzwedel*, 401 N.W.2d 509, 513 (N.D. 1987). The question of whether there is an accord and satisfaction is a question of fact, subject to the clearly erroneous standard of review. *Wheeler v. Southport Seven Planned Unit Dev.*, 2012 ND 201, ¶ 22, 821 N.W.2d 746. A finding of fact is clearly erroneous if it induced by an erroneous view of the law, there is no evidence to support it, or if on the entire evidence we are left with a definite and firm conviction a mistake has been made. *Id.* at ¶ 23.

[¶14] "An accord is an agreement to accept in extinction of an obligation something different from or less than that to which the person agreeing to accept is entitled." N.D.C.C. § 9-13-04. "Satisfaction" is defined as "[a]cceptance by the creditor of the consideration of an accord extinguishes the obligation[.]" N.D.C.C. § 9-13-05. This Court has explained "accord and satisfaction" is:

> "[A] method of discharging a contract or cause of action by which the parties agree to give and accept something in settlement of a claim or demand of one against the other, where they thereafter perform such agreement." *Campbell v. Beaton*, 117 N.W.2d 849, 850 (N.D. 1962). The "accord" is the agreement and the "satisfaction" is its execution or performance. *Beaton*, supra; §§ 9-13-04 and 9-13-05, N.D.C.C.

*Mougey*, 401 N.W.2d at 513 (quoting *Shirazi v. United Overseas, Inc.*, 354 N.W.2d 651, 654 (N.D. 1984)).

4

[¶15] The district court noted Fred Sande's petition for confirmation of distribution requested that the $90,000 payment from Philip Sande to Fred Sande be treated as a distribution from the Estate to Fred Sande, and found Fred Sande testified the $90,000 payment was in settlement of his rights in the Estate. The court indicated Philip Sande suggested in his post-trial brief that the payment was a contribution toward Philip-Frederick Enterprises, but the court rejected that argument. The court found the payment was made days after Geraldine Sande's death and before Fred Sande was appointed personal representative, the payment was made nearly eight months before checks were written on the Philip-Frederick Enterprises partnership account and more than six months before payments were allegedly made for refurbishing Geraldine Sande's real property, and evidence established Philip Sande would not have authorized a check for that amount or that far in advance of the commencement of work or expenditure of funds for the partnership. The court found the $90,000 check from Philip Sande to Fred Sande constituted payment in settlement of Fred Sande's interest in Geraldine Sande's estate.

[¶16] Jason Olson, an accountant at Eide Bailly who prepared a forensic accounting report for Fred Sande, testified Fred Sande told him the $90,000 check was issued after Geraldine Sande's death and that amount was included in his forensic report as a deduction against what was owed to Fred Sande from Geraldine Sande's estate. Fred Sande testified that according to Philip Sande that money was "what I had coming from my mother for money." He further testified that the $90,000 was "inheritance from my ma." In testifying about the repairs he made to the real property, Fred Sande testified that he paid some of it from the money he received as his inheritance, referring to the $90,000.

[¶17] Evidence in the record supports the district court's findings. We conclude the court's finding that the $90,000 payment constituted payment in settlement of Fred Sande's interest in Geraldine Sande's estate is not clearly erroneous.

IV

[¶18] Fred Sande argues the district court erred in finding Geraldine Sande's acceptance of a $55,000 promissory note was an accord and satisfaction of what she was entitled to receive for her interest in Sande Music. He also argues the court erred by finding Geraldine Sande waived her right to receive her share of the proceeds from the sale of Sande Music and demand repayment of Philip Sande's personal expenses paid from the Sande Music business account. He claims the purpose of the promissory note was for Philip Sande to repay Geraldine Sande for her share of $100,000 in Sande Music proceeds that he deposited into his separate account.

[¶19] "A waiver occurs when a person voluntarily and intentionally relinquishes a known right or privilege." *Wachter Dev., Inc. v. Martin*, 2019 ND 202, ¶ 22, 931 N.W.2d 698 (quoting *In re Estate of Harms*, 2012 ND 62, ¶ 8, 814 N.W.2d 783). Generally, the absence or existence of waiver is a question of fact, subject to the clearly erroneous standard of review. *Wachter*, at ¶ 22. The existence of waiver "can be found from an unexplained delay in enforcing contractual rights or accepting performance different than that called for under the contract." *Id.*

[¶20] The district court found Fred Sande failed to prove by a preponderance of the evidence that Philip Sande had a non-contingent indebtedness to the Estate by having received more of the proceeds of the sale of Sande Music than that to which he was entitled or that Philip Sande owed Geraldine Sande $55,000 at the time of her death. The court found evidence established Geraldine Sande and Philip Sande's regular and long-term partnership practice was to pay personal expenses out of the partnership account with no expectation of reimbursement, Geraldine Sande lived for two and a half years after the sale of the business, she did not challenge Philip Sande's actions, and Fred Sande failed to show that Geraldine Sande was incapable of looking out for her interests or that Philip Sande took advantage of her. The court found "[t]o the extent that either partner may have had a right to insist upon [repayment of the other's] personal expenses paid by the partnership or

6

adjustment of the distribution of income to account for such, both partners, Geraldine [Sande] in particular, waived that right."

[¶21] The district court also found that accord and satisfaction applies to any funds Philip Sande owed Geraldine Sande from the proceeds of the sale of Sande Music prior to Geraldine Sande's December 2011 meeting with her accountants and that she agreed any and all funds she was due from Philip Sande were deemed paid in full apart from the funds to be paid pursuant to the $55,000 promissory note. The court found Geraldine Sande met with her accountants in December 2011; there was a calculation of the funds Geraldine Sande was due from the sale at that time; and she was satisfied that she received or would receive, through the promissory note, all of the proceeds she was entitled to from the sale of Sande Music. The court found Philip Sande paid $53,000 of the $55,000 promissory note. The court found the only credible evidence about Geraldine Sande's meeting with the accountants came from Michael Parke, one of the accountants. The court found Fred Sande failed to prove Philip Sande was indebted to the Estate because he received more than his share of the proceeds from the sale of Sande Music or because he owed Geraldine Sande $55,000 at the time of her death.

[¶22] Evidence established that the partners paid personal expenses from the partnership account before they received a percentage of the profit. Donald Bussier, an accountant who provided services to Geraldine Sande, testified it was common for the partners to use the Sande Music account for personal expenses. He testified they did not reimburse Sande Music for the personal expenses they spent from the partnership account, they just considered those personal expenses, and those amounts were not deducted as business expenses on the partnership tax returns.

[¶23] Parke testified Geraldine Sande sent him a letter in December 2011 asking to meet with him and Bussier to discuss what happened to the proceeds from the sale of Sande Music and to go over her tax return. Parke testified they met with Geraldine Sande, they told her $600,000 of the $800,000 sales proceeds had been paid, she was to receive 55 percent of the installment payments for the remaining $200,000, she had not received 55 percent of the

7

$600,000 that had already been paid, and she was owed $55,000 for the remainder of her share of those proceeds. Parke testified the purpose of the $55,000 promissory note was for Philip Sande to pay Geraldine Sande for the remainder of her share of the Sande Music proceeds, Geraldine Sande agreed to the arrangement, and she was satisfied with their explanations at the end of the meeting. Parke and Bussier also testified Geraldine Sande did not indicate she believed any money had been improperly taken from her or that she was not receiving her share of the proceeds from the sale. Parke testified $53,000 worth of payments on the promissory note were made from Philip Sande's bank account to the Sande Music account before Geraldine Sande's death. Parke testified Geraldine Sande would call him to ask for money, he contacted Philip Sande each time, Philip Sande would approve the payments, and Geraldine Sande knew the payments were being applied to the amount due on the promissory note.

[¶24] The evidence supports the district court's findings that Geraldine Sande waived any right to repayment of personal expenses paid from the partnership account and that the promissory note was in accord and satisfaction for funds Philip Sande may have owed Geraldine Sande from the sale of Sande Music. We conclude the district court's findings are not clearly erroneous.

V

[¶25] Fred Sande argues the district court erred by disregarding the Eide Bailly forensic accounting report.

[¶26] The district court indicated it was not giving much weight to the testimony from Jason Olson, an Eide Bailly accountant, about the forensic accounting report Eide Bailly prepared for Fred Sande. The court found Olson's opinions were based on assumptions that were not warranted by the evidence and Olson did not consider the underlying facts, including the parties' past business practices, that Geraldine Sande met with her accountants to discuss the proceeds from the sale of Sande Music, and that Philip Sande had paid the promissory note. The court concluded it was "unwilling to give much, if any, consideration" to Olson's final opinion because the most significant

8

assumptions upon which his opinion was based were not supported by or were contrary to the evidence.

[¶27] Fred Sande's argument goes to the weight the district court gave the evidence and the court's determination of the witnesses' credibility. In a bench trial, the district court decides credibility issues. *In re Estate of Thompson*, 2008 ND 144, ¶ 10, 752 N.W.2d 624. We give due regard to the court's opportunity to assess the witnesses' credibility, and we do not second guess the court's credibility determinations or reweigh the evidence. *Id.* The district court's choice between two permissible views of the evidence is not clearly erroneous. *Id.* We conclude the district court did not err by failing to give the Eide Bailly report and Olson's testimony more weight.

VI

[¶28] Fred Sande argues the district court erred by finding he breached his fiduciary duties as the personal representative. He contends Philip Sande was not damaged by any alleged breach.

[¶29] Whether a personal representative breached a fiduciary duty is a question of fact, which will not be reversed on appeal unless it is clearly erroneous. *In re Estate of Vendsel*, 2017 ND 71, ¶ 12, 891 N.W.2d 750. "On appeal, a trial court's findings of fact are presumed to be correct and the complaining party bears the burden of showing a finding is clearly erroneous." *Id.* (quoting *In re Estate of Gleeson*, 2002 ND 211, ¶ 17, 655 N.W.2d 69).

[¶30] To establish a breach of fiduciary duty, the person bringing the claim must prove: "1. A fiduciary relationship between the plaintiff and defendant. 2. A duty by the defendant to the plaintiffs arising from that relationship. 3. The defendant['s] breach of that duty. 4. Damage to the plaintiffs proximately caused by that breach of duty." *Vendsel*, 2017 ND 71, ¶ 14, 891 N.W.2d 750 (quoting *Meyer v. Maus*, 2001 ND 87, ¶ 14, 626 N.W.2d 281).

[¶31] The district court found Fred Sande understood Geraldine Sande's real property was to be conveyed to Philip Sande and himself, and Fred Sande executed and recorded the personal representative's deed transferring the

9

property solely to himself in February 2015. The court found Fred Sande breached his fiduciary duty because he failed to timely file a full and correct inventory and appraisement to accomplish a timely administration of the Estate, his retention petition against Philip Sande was for his personal benefit, and he transferred the real property to himself and not to Geraldine Sande's intestate heirs. The court also expressed it had concerns there could be liens or other encumbrances on the real property, the property was no longer in the same condition as it was at the time of Geraldine Sande's death, and Fred Sande had failed to insure the property. The court found Fred Sande breached his fiduciary duty to Philip Sande and awarded Philip Sande damages in the amount of half of the value of the real property at the time of Geraldine Sande's death. The court explained it was awarding damages in lieu of ordering Fred Sande to re-convey the property to the Estate and thereafter to the parties in equal shares because of its concerns about the property.

[¶32] "A personal representative is a fiduciary who shall observe the standards of care applicable to trustees." N.D.C.C. § 30.1-18-03(1). "The personal representative shall use the authority conferred upon the personal representative by [N.D.C.C. tit. 30.1], the terms of the will, if any, and any order in proceedings to which the personal representative is party for the best interests of successors to the estate." *Id.* A personal representative must settle and distribute the estate as expeditiously and efficiently as is consistent with the best interests of the estate. *See id.*; *In re Estate of Thomas*, 532 N.W.2d 676, 686 (N.D. 1995).

[¶33] As personal representative, Fred Sande had a duty to distribute the real property to Geraldine Sande's heirs. The evidence established Fred Sande transferred the real property to himself. Fred Sande testified he understood the real property should be distributed to himself and Philip Sande as 50 percent undivided interest. Fred Sande testified he renovated the real property and turned it into rental property. Evidence established the property was worth $280,000 at the time of Geraldine Sande's death. There was some evidence the changes Fred Sande made did not increase the value of the property. Fred Sande testified he did not insure the property. The damages

were awarded because the district court was concerned with the current state of the property and whether there were any liens or other encumbrances.

[¶34] The evidence supports the district court's findings. We conclude the court's finding that Fred Sande breached his fiduciary duty is not clearly erroneous.

VII

[¶35] Fred Sande argues the district court abused its discretion by denying his request for personal representative's fees and attorney's fees.

[¶36] A district court's decision on attorney fees will not be reversed on appeal absent an abuse of discretion. *In re Estate of Brandt*, 2019 ND 87, ¶ 41, 924 N.W.2d 762. A court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, it misinterprets or misapplies the law, or its decision is not the product of a rational mental process leading to a reasoned determination. *Id.* at ¶ 35. Under N.D.C.C. § 30.1-18-20, a personal representative is entitled to receive attorney's fees for estate litigation prosecuted in good faith. The personal representative's actions must be in good faith and for the benefit of the estate. *Brandt*, at ¶ 43. Attorney's fees are "frequently disallowed if the legal services are performed 'primarily for the personal interest of the personal representative and not for the benefit of the estate as a whole.'" *Oliver v. City of Larimore*, 540 N.W.2d 630, 633 (N.D. 1995) (quoting *In re Estate of Rohrich*, 496 N.W.2d 566, 571 (N.D. 1993)).

[¶37] A personal representative is entitled to reasonable compensation for his services. N.D.C.C. § 30.1-18-19. The district court's decision whether to award personal representative's fees will not be reversed on appeal unless the court abused its discretion. *In re Estate of Peterson*, 1997 ND 48, ¶ 18, 561 N.W.2d 618.

[¶38] The district court found most of the claimed personal representative's fees were for efforts related to the real property Fred Sande transferred to himself. The court found Fred Sande sought reimbursement for attorney's fees, but he testified he did not know whether the attorneys were representing

11

him individually or the Estate. The court found the litigation costs and a substantial portion of the attorney's fees were more in pursuit of Fred Sande's own personal interests than the Estate's interests. The court did not act in an arbitrary, unreasonable, or unconscionable manner. We conclude the court did not abuse its discretion.

## VIII

[¶39] We affirm the judgment.

[¶40] Gerald W. VandeWalle
Jerod E. Tufte
Lisa Fair McEvers
Daniel J. Crothers
Jon J. Jensen, C.J.