JOSEPH E. NONNENMANN, Plaintiff-Appellee, *v.* LUCKY STORES, INC., Defendant-Appellant and Counterplaintiff.—(ROBERT HALL *et al.*, Counterdefendants.)

Third District   No. 77-29

Opinion filed October 11, 1977.

510

Eric F. Schwarz and Clyde D. Stoltenberg, both of Van Der Kamp, Crampton & Snyder, P.C., of Rock Island, for appellant.

Bernard C. Gillman and Dorothea O'Dean, both of Rock Island, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:
Lucky Stores, Inc., a California corporation, appeals from a judgment of the Circuit Court of Rock Island County by the terms of which Lucky Stores, Inc. was enjoined from using certain property as a parking lot, and wherein judgment was also entered in favor of plaintiff, Joseph E. Nonnenmann, in the amount of $3,000 for attorneys' fees plus costs. Plaintiff Nonnenmann had initiated an action in the Circuit Court of Rock Island County to enjoin defendant Lucky Stores from using certain lots in Suncourt Subdivision in Milan, Illinois, as a parking lot, on the basis that such use violated a covenant running with the land associated with the

real estate in the subdivision and, also, the applicable zoning restrictions as to such lots.

On appeal in this court, defendant Lucky Stores argues that the trial court erred in granting the relief sought by plaintiff (1) because plaintiff lacked standing to contest defendant's proposed use of the property, (2) because certain necessary parties were not joined in plaintiff's action, (3) because plaintiff's legal remedies were adequate, (4) because the trial court erred in finding that defendant's proposed use of its property violated applicable zoning restrictions and substantially affected plaintiff's property, and (5) because the properties surrounding defendant's and plaintiff's properties had so changed in character as to make defendant's property unfit or unprofitable for use if the restrictions sought to be applied by plaintiff are enforced.

We note, from an examination of the record, that the Suncourt Subdivision plat, which was recorded on June 24, 1954, consisted of 13 lots, 6 lying on one side and 7 on the other side, on Court Street, a north-south public road, which divides Suncourt Subdivision roughly equally, with lots 1 through 6 lying to the west of Court Street and lots 7 through 13 lying to the east. The subdivision is on the south of and adjacent to Knoxville Road. The subdivision plat contains a series of covenants applicable to the subdivision and includes the restriction that: "Lot 1 shall be known as [a] commercial or business lot. All other lots shall be for residential use." (It appears that at the time the plat was recorded, a grocery store was located on lot 1.) The Suncourt Subdivision plat further contained a provision that "These covenants are to run with the land and shall be binding upon all parties and all persons claiming under them until June 1, 1978 * * *." (There were provisions for extension of such covenants which are not involved in the present procedure.)

It also appears that in 1962, plaintiff completed construction of a four-plex apartment building on lots 12 and 13 in the subdivision. On January 20, 1964, Suncourt Subdivision was annexed to the Village of Milan. At the time the subdivision was annexed, all lots were used for residential purposes, except for lot 1 which was used for both residential and commercial purposes. The annexation ordinance of the Village of Milan designated lots 1, 12, and 13 of Suncourt Subdivision as commercial (C-1) zones, and the remaining lots were classified as residential (R-2) zones.

Defendant Lucky Stores owns and operates a warehouse located across Knoxville Road to the north of Suncourt Subdivision. In 1973, defendant purchased lots 10 and 11 in Suncourt Subdivision, which lots were then improved with single-family dwellings. Defendant rented out the dwellings for a period, but, in the fall of 1975, defendant commenced construction of a parking lot on lots 10 and 11 in Suncourt Subdivision. The parking lot on lots 10 and 11 was to constitute an extension of a

preexisting parking lot located directly east of, and adjoining the entire eastern boundary of Suncourt Subdivision.

Plaintiff filed his original complaint for an injunction in this cause on October 20, 1975 in the Circuit Court of Rock Island County. The amended complaint was filed on October 31, 1975, and alleged that defendant's use of lots 10 and 11 as a parking lot for defendant's trucks and for defendant's employee's automobiles violated both the applicable covenant running with the land as to such real estate and also the zoning ordinances and requested an injunction ordering defendant to refrain from using the lots as a parking lot and, also, requesting payment of plaintiff's attorneys' fees.

It appears, also, that after the filing of plaintiff's suit, defendant continued with the construction and completion of the parking lot and installed four light standards therein. While defendant Lucky Stores ostensibly constructed the parking lot on lots 10 and 11 for use as an overflow area for the personal vehicles of defendant's second shift employees, it appears that trucks or similar vehicles could use the lot if defendant so desired.

The trial court entered an order on November 18, 1976, finding that defendant's use of lots 10 and 11 as a parking lot would result in irreparable damage to plaintiff, and enjoined defendant Lucky Stores from making such use of the lots. The trial court also granted judgment in favor of plaintiff in the sum of $3,000 attorneys' fees plus costs of suit.

■■ Defendant Lucky Stores first argues on this appeal that plaintiff lacked standing to contest defendant's proposed use of lots 10 and 11 as a parking lot. It appears that while the Milan ordinance annexing Suncourt Subdivision to the village designated lots 1, 12 and 13 as C-1 (Commercial) zoning, and while plaintiff testified at the trial that his lots were zoned C-1, the complaint alleged that all lots in Suncourt Subdivision were zoned residential (R-1). Defendant argues that since plaintiff's use of lots 12 and 13 does not meet the allegedly R-1 zoning standards, plaintiff does not have standing to contest defendant's violation of a zoning standard. This argument, however, does not affect the issuance of an injunction based upon defendant's violation of covenants pertaining to the use of the real estate, and any owner of lots has a right to enforce such restrictive covenants by action under the terms of such covenants.

Defendant next contends that the trial court erred in denying defendant's motion to add certain parties to the proceeding. A section of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 11—13—15) which authorizes proceedings to prevent violation of local zoning ordinances, provides that such an action may be brought by:

    "* * * the proper local authorities of the municipality, or any

owner or tenant of real property, within 500 feet in any direction of the property on which the building or structure in question is located * * *."

■■ ■ After plaintiff had brought the initial action in this cause, defendant (in June 1976) moved to add as additional parties to the action, the tenants residing in plaintiff's four-plex, and the trial court allowed defendant's motion. Later, when defendant moved (in September 1976) to add additional plaintiff's tenants to the proceeding, the trial court denied the motion, and it is this ruling that defendant now asserts as error. As the court stated in *National Bank v. S.N.H., Inc.* (1st Dist. 1975), 32 Ill. App. 3d 110, 121, 336 N.E.2d 115:

> "Whenever a party has been omitted whose presence is so indispensable to a decision of the case upon its merits that a final decree cannot be made without materially affecting his interests, the court should not proceed to a decision on the merits. The objection may be made by a party at the hearing or on appeal, and the court will upon its own motion take notice of the omission and require the omitted party to be made a party to the litigation even though no objection is made by any party litigant. (Citations.)"

We note, however, that the rights and interests of plaintiff's tenants in this litigation necessarily are derived through plaintiff, and that plaintiff can adequately represent those rights and interests. In addition, section 11—13—15 authorizes "any owner or tenant" to bring an action, and does not provide that the joinder of an owner and his tenant is necessary in such an action. We conclude, therefore, that the trial court did not abuse its discretion in denying defendant's motion to add certain additional (of plaintiff's) tenants to the proceeding under the facts in this case.

Defendant next argues that since plaintiff's damages include loss of rent from and diminution in value of his four-plex, plaintiff should be left to his remedies at law, and not be allowed the equitable remedy of injunction. With respect to the enforcement of restrictive covenants, the court in *Exchange National Bank v. City of Des Plaines* (1st Dist. 1975), 32 Ill. App. 3d 722, 733, 336 N.E.2d 8, stated:

> "While restrictive covenants are not favored under Illinois law [citation], unless the covenant is contrary to law it will be enforced and its breach enjoined unless the party against whom enforcement is sought sustains the burden of showing in accord with equitable principles that continued enforcement would be inequitable. [Citation.]"

Also, with respect to enforcement of municipal zoning ordinances, section 11—13—15 of the Illinois Municipal Code provides:

> "In any action or proceeding for a purpose mentioned in this section, the court with jurisdiction of such action or proceeding has

the power and in its discretion may issue * * * a permanent injunction, upon such terms and under such conditions as will do justice and enforce the purposes set forth above [including the restraint, correction or abatement of violation of municipal zoning ordinances]." (Ill. Rev. Stat. 1975, ch. 24, par. 11—13—15.) Under theories of both the enforcement of restrictive covenants and zonong ordinances, plaintiff would be entitled to proceed in an action for an injunction as against defendant, unless defendant could show that enforcement of the applicable restrictions would be inequitable.

■■ While monetary loss is a component of plaintiff's damages, those damages also include factors not easily compensable at law, such as the separation of plaintiff's property from contiguous residential property, a factor which may bear on future development and value of plaintiff's land. The mere inclusion in plaintiff's damage of ascertainable money loss, therefore, such as loss of rent and diminution in value of the plaintiff's four-plex, does not preclude plaintiff from the equitable remedy of injunction, deemed appropriate under the facts in the record, as shown in this case.

■■ Defendant also argues in this court, that this court should balance the benefit to be obtained by plaintiff, if the injunction were issued, against the hardship to defendant upon issuance of the injunction. As this court stated in *LeClerq v. Zaia* (3d Dist. 1975), 28 Ill. App. 3d 738, 742, 328 N.E.2d 910:

> "A court of equity will normally balance the hardship of a proposed injunction upon a defendant as against benefit to be derived therefrom by a plaintiff. [Citation.] Such balancing of equity, however, is not normally considered where encroachment by a defendant was intentional. [Citation.]"

We note that while the lots owned by defendant are now improved as a parking lot, and while an injunction would render those improvements made largely useless, we have specifically noted that completion of the improvements was undertaken and done while this action was pending and after it had been commenced. Since the violative improvements were completed in the face of plaintiff's assertion of right, and therefore must be considered to be intentional, we believe that we should not undertake a balancing of hardships under the circumstances as shown by the record in this case.

■■ Defendant argues that the trial court erred in finding defendant's use of the lots as a parking lot violated the applicable residential zoning restrictions, and that defendant's use of the property as a parking lot is no more burdensome that uses permitted in a residential zone. We note, in passing, that the Milan zoning ordinance enumerates uses permitted in a residential zone and nowhere does it mention parking lots as a permissible

use in a residential zone. As the supreme court stated in *Tomasek v. City of Des Plaines* (1976), 64 Ill. 2d 172, 179-180, 354 N.E.2d 899:

"* * * [A zoning] ordinance will be presumed to be valid, and the one attacking an ordinance bears the burden of demonstrating its invalidity. The challenging party must establish by clear and convincing evidence that the ordinance, as applied, is arbitrary and unreasonable and bears no substantial relation to the public health, safety or welfare."

We conclude that the trial court did not err in finding that defendant's proposed use violated the applicable zoning restrictions, and further that defendant has not borne the necessary burden of showing that the ordinance is invalid as applied to its property.

■■ Defendant also argues that the trial court erred in making certain findings required by section 11—13—15. Such section provides:

"* * * any owner or tenant of real property, within 500 feet in any direction of the property on which the building or structure in question is located who shows that his property or person will be substantially affected by the alleged violation, in addition to other remedies, may institute any appropriate action or proceeding * * * to prevent the unlawful construction, reconstruction, alteration, repair, conversion, maintenance, or use * * *.

An owner or tenant need not prove any specific, special or unique damages to himself or his property or any adverse effect upon his property from the alleged violation in order to maintain a suit under the foregoing provisions." (Ill. Rev. Stat. 1975, ch. 24, par. 11—13—15.)

From the record, it is clear that the activity which would be generated by the parking lot for defendant's employees, as opposed to the use of the lots for residential purposes, has a substantial impact upon plaintiff's neighboring property. We conclude that the trial court did not err in finding that plaintiff satisfied the requirement of section 11—13—15.

■■ Defendant finally argues that plaintiff should be denied injunctive relief because the usages surrounding defendant's properties have so changed as to make defendant's properties unfit or unprofitable for use if the restrictions sought to be applied by plaintiff are enforced. We note that, prior to demolition of the residences on lots 10 and 11 by defendant, all lots in Suncourt Subdivision were improved with residential structures. Defendant has not demonstrated to this court any evidence of the economic infeasibility of renting the residential structures which defendant demolished. While defendant does argue that the area surrounding the Suncourt Subdivision has tended to develop as a nonresidential area, we believe that the record, as established in this cause, indicates that defendant has not demonstrated such a change in

character and environment of the property as to render the restrictive covenants unenforceable. It is clear that there was a direct violation of the restrictive covenant in this cause and that such violation partially occurred after the law suit seeking injunctive relief was filed by plaintiff.

For the reasons heretofore stated, the judgment of the Circuit Court of Rock Island County is affirmed.

Affirmed.

STOUDER and SCOTT, JJ., concur.