# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2020 ND 150

Stephen Zundel,                                         Plaintiff and Appellant

  v.

Loren Zundel and Richard Zundel,           Defendants and Appellees

## No. 20190334

Appeal from the District Court of LaMoure County, Southeast Judicial District, the Honorable Daniel D. Narum, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Fallon M. Kelly, Lisbon, ND, for plaintiff and appellant.

Benjamin J. Hasbrouck, Fargo, ND, for defendants and appellees.

**Zundel v. Zundel**
**No. 20190334**

**Crothers, Justice.**

[¶1]   Stephen Zundel appeals the district court judgment finding that the bill of transfer is void as a result of Stephen Zundel's undue influence over his father, Edwin Zundel, and that the bill of transfer was not validly accepted because it was not signed by a notary. Loren and Richard Zundel argue the district court did not clearly err because the evidence supports the district court's findings of fact and conclusion that the bill of transfer is invalid. We affirm.

I

[¶2]   Stephen Zundel sued his brothers, Loren and Richard Zundel, seeking possession of personal property subject to the May 2013 bill of transfer. Loren and Richard Zundel believed the property is part of Edwin Zundel's estate. Loren Zundel served as personal representative of the estate and answered the complaint, denying Stephen Zundel's allegations. Loren Zundel sought declaratory judgment claiming the bill of transfer was invalid because Stephen Zundel obtained Edwin Zundel's signature through undue influence and the document was falsely notarized by Stephen Zundel who was not a notary public.

[¶3]   Judge Narum issued an order to show cause and a hearing was held on March 8, 2018. At the hearing Judge Narum noted his previous recusal in a different case between the parties due to ex parte communication. He stated he had not recused himself from this case and asked if the parties would like to make a record on the issue. Both parties declined and the hearing proceeded.

[¶4]   A bench trial was held on May 2, 2019, and Judge Narum issued a memorandum opinion on July 11, 2019. The district court found Stephen Zundel obtained his father's signature on the bill of transfer through undue influence and the bill of transfer was not properly accepted because it had not

been signed by a notary. As a result, the district court judgment declared the bill of transfer was void.

[¶5] After the case was decided Stephen Zundel served a subpoena on the nursing home where Edwin Zundel lived to obtain records to challenge allegations raised at trial that Edwin Zundel returned to the home bruised after visiting Stephen Zundel. Loren and Richard Zundel moved to quash the subpoena and the district court granted the motion.

## II

[¶6] Stephen Zundel broadly argues the district court's finding of undue influence was motivated by bias.

[¶7] At the March 8, 2018 motion hearing Judge Narum noted his previous recusal in a different case between the parties due to ex parte communication. He stated he had not recused himself from this case and asked if the parties would like to make a record on the issue. *See* N.D. Code Jud. Conduct 2.9, cmt. 6. Both parties declined and the hearing proceeded.

[¶8] "We have repeatedly held that issues not raised in the trial court cannot be raised for the first time on appeal. The failure to raise the issue of judicial bias in the trial court precludes our review on appeal." *Molitor v. Molitor*, 2006 ND 163, ¶ 12, 718 N.W.2d 13 (citing *Wenzel v. Wenzel*, 469 N.W.2d 156, 158 (N.D. 1991)). Further, "[a]dverse rulings alone are not evidence of judicial bias or partiality." *Lucas v. Riverside Park Condos. Unit Owners Ass'n*, 2009 ND 217, ¶ 12, 776 N.W.2d 801. Because judicial bias was not raised in the district court, we decline to address it for the first time on appeal.

## III

### A

[¶9] Stephen Zundel argues the district court's finding of undue influence was clearly erroneous. Loren and Richard Zundel argue the district court findings are supported by the evidence and are not clearly erroneous. We affirm the district court finding of undue influence.

2

[¶10] "Whether undue influence occurred generally presents a question of fact." *Riskey v. Riskey*, 2018 ND 214, ¶ 8, 917 N.W.2d 488 (citing *Erickson v. Olsen*, 2014 ND 66, ¶ 19, 844 N.W.2d 585). "Undue influence must be sufficiently proven, a mere suspicion is not enough." *Estate of Mickelson*, 477 N.W.2d 247, 250 (N.D. 1991). "This Court's review of a district court's findings of fact in a bench trial is governed by the clearly erroneous standard under N.D.R.Civ.P. 52(a)." *Wheeler v. Southport Seven Planned Unit Dev.*, 2012 ND 201, ¶ 23, 821 N.W.2d 746. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or if . . . on the entire evidence [this Court] is left with a definite and firm conviction a mistake has been made." *Id.* (citing *Prchal v. Prchal*, 2011 ND 62, ¶ 11, 795 N.W.2d 693 (internal quotation marks omitted)). "[W]e do 'not reweigh evidence or reassess witness credibility when the evidence supports the court's findings.'" *Id.* (internal quotation marks omitted).

[¶11] "Section 59-18-01.1, N.D.C.C., provides a rebuttable presumption of undue influence for certain trust transactions. We have said that '[t]his presumption applies not only to transactions involving trustees, agents, and attorneys-in-fact, but also to all transactions involving confidential relationships.'" *Riskey*, 2018 ND 214, ¶ 15, 917 N.W.2d 488 (citing *In re Estate of Harris*, 2017 ND 35, ¶ 19, 890 N.W.2d 561 (quoting *In re Estate of Bartelson*, 2015 ND 147, ¶ 16, 864 N.W.2d 441)); *see also In re Estate of Vizenor*, 2014 ND 143, ¶¶ 26-27, 851 N.W.2d 119.

[¶12] Here, the district court concluded the "evidence clearly and convincingly showed that Edwin relied to a significant extent on Stephen for care, transportation, and the management of his affairs" and therefore a significant confidential relationship existed. This finding is supported by the evidence. Stephen Zundel testified Edwin Zundel lived with him from 2006 until Edwin Zundel was moved into a nursing home. Stephen Zundel testified he drove his father to appointments, funerals, out shopping, for groceries, to the cemetery, or anytime something required travel. Stephen Zundel also testified he had a joint bank account with Edwin Zundel and he signed checks for him, bought items for Edwin Zundel from that account, and paid Edwin Zundel's bills. We

conclude the district court finding that a confidential relationship existed was not clearly erroneous. Therefore, a rebuttable presumption of undue influence existed.

[¶13] The district court identified the elements of undue influence as "(1) a person susceptible to undue influence; (2) the opportunity to exercise such influence existed; (3) there was a disposition to exercise such influence; and (4) the result appears to be the effect of such influence." "In nontestamentary cases, this Court has held '[a] finding of undue influence . . . requires that three factors be established: (1) A person who can be influenced; (2) The fact of improper influence exerted; and (3) Submission to the overmastering effect of such unlawful conduct.'" *Riskey*, 2018 ND 214, ¶ 12, 917 N.W.2d 488. Neither party challenged the elements applied by the district court. For purposes of this appeal, we will assume that the four-factor test applies to whether undue influence occurred in a bill of transfer. *Id.* at ¶ 14; s*ee Erickson v. Brown*, 2008 ND 57, ¶ 27, 747 N.W.2d 34 (citing *State v. Duchene*, 2007 ND 31, ¶ 10, 727 N.W.2d 769) ("Issues not briefed by an appellant are deemed abandoned, and thereby become the law of the case and will not be considered on appeal.").

[¶14] The district court concluded Stephen did not overcome the presumption of undue influence with credible evidence. Under the four-factor test the district court found, "All elements of undue influence are clearly present, and the Court concludes, based on the credible evidence, that the Bill of Transfer is invalid and void as a result of Stephen's undue influence over Edwin Zundel."

[¶15] First, the district court heard evidence regarding Stephen Zundel's opportunity to influence Edwin Zundel. Stephen Zundel testified he lived alone with his father since his mother passed away, and frequently saw his father alone after he lived in the nursing home. Stephen Zundel testified he tried to talk to his father everyday on the telephone to update him about what was going on at the farm. Stephen Zundel also testified he helped his father run errands, get to appointments, and was a joint owner on Edwin Zundel's primary bank account. Loren Zundel also testified he believed Stephen Zundel wanted to be in control of who brought Edwin Zundel to his appointments.

Stephen Zundel also testified no one else was in the room at the nursing home when Edwin Zundel signed the bill of transfer.

[¶16] Second, the district court heard evidence Edwin Zundel was susceptible to undue influence in May 2013. Stephen Zundel testified when Edwin Zundel was first released from the hospital he went into a nursing home. He also testified that Edwin Zundel was transferred to a different nursing home because he needed a higher level of care. Loren Zundel testified after Edwin Zundel was released from the hospital "he was not like he was before." Loren Zundel testified Edwin Zundel was having memory lapses, and was physically declining. Stephen Zundel testified Edwin Zundel "was sharp up until the very end." The district court found Loren Zundel's testimony was more credible. "[W]e do 'not reweigh evidence or reassess witness credibility when the evidence supports the court's findings.'" *Wheeler*, 2012 ND 201, ¶ 23, 821 N.W.2d 746.

[¶17] The question whether Stephen Zundel had a disposition to exercise undue influence also was before the district court. The district court found Stephen Zundel had the disposition to exercise undue influence over Edwin Zundel to deprive his brothers of their legal rights. The district court found Stephen Zundel engaged in at least five legal disputes with his brothers since late 2012. The district court stated, "Simply put, Stephen clearly has shown a disposition to harass or harm his brothers, this time by depriving them of their share of the inheritance of their father's property—largely of sentimental value." Testimony supports the district court's finding Stephen Zundel was upset with his brothers and wanted to deprive them of their legal rights. When asked whether Stephen Zundel felt his brothers were wronging him, he testified, "Yeah . . ." He also testified he complained to his father regularly over the course of a year about how his brothers would make it difficult for him to access Donald Zundel's estate equipment, and that his brothers would sell Edwin Zundel's personal property when he died and he would not be able to use it.

[¶18] The district court also heard testimony about previous litigation and disagreements between the families. Stephen Zundel testified he was court

ordered to pay rent on his farm lease. He also testified about the buy-sell agreement dispute between him and Loren Zundel in January 2013. He also testified about the bin site lease which was before this Court. *Zundel v. Zundel*, 2017 ND 217, 901 N.W.2d 731. Loren Zundel also testified about Donald Zundel's estate litigation, stating the court did not award Stephen Zundel damages based on his argument he was deprived of his fair and equal use of the estate equipment.

[¶19] Finally, the district court heard evidence regarding whether the bill of transfer was the result of undue influence. Stephen Zundel testified he first raised the idea of the bill of transfer to his father. Stephen Zundel testified his lawyer drafted the bill of transfer and he itemized the personal property. This was in contrast to the power of attorney prepared by Edwin Zundel's lawyer. He also testified the bill of transfer was signed only after he complained for a year about equipment being left in awkward places so he could not use it and his brothers' alleged mistreatment of him. Stephen Zundel testified he told Edwin Zundel that Loren and Richard Zundel would take and sell his property if he did not transfer it to him.

[¶20] The bill of transfer gave Stephen Zundel multiple vehicles, "all gas-tanks and fuel-tanks," "[a]ll [t]ractors," "[a]ll payloaders," "[a]ll drags," "[a]ll [h]ay equipment," "all welders; [a]ll compressors, tanks and accessories," "[a]ll shop tools," "[a]ll hydraulic presses and cranes," and multiple other items. The bill of transfer also purported to transfer "anything remaining at the farm." This is more than if the personal property had gone through Edwin Zundel's estate which divided the property amongst his heirs.

[¶21] The district court also heard testimony about the revocation of the power of attorney. The district court stated, "The Court is troubled by the revocation of the power of attorney to which much trial testimony was dedicated." The district court found, "The power of attorney, of course, would have been an obstacle to Stephen's subsequent efforts to get Edwin to transfer property to Stephen."

[¶22] Loren Zundel testified the nursing home suggested Edwin Zundel have a power of attorney. Loren Zundel testified he explained this to Edwin Zundel, who was in total agreement. Loren Zundel testified two witnesses and a notary from the nursing home signed the power of attorney. He also testified there was discussion between the people at the nursing home and Edwin Zundel ensuring he wanted the power of attorney. Stephen Zundel testified he explained to his father that Loren Zundel could decide where he lived and that Edwin Zundel would not have a say in it. Less than a month later, Stephen Zundel or his attorney drafted a revocation of power of attorney document and Stephen Zundel presented it to Edwin Zundel at the nursing home. Stephen Zundel testified the document required a notary and that nursing home staff would not notarize the document. He testified he arranged with the family tax accountant to notarize the document at the nursing home. The accountant testified he did not read the document he was about to notarize, and he did not discuss the content of the document with Edwin Zundel.

[¶23] Stephen Zundel also testified he, or someone acting on his behalf, drafted multiple documents he presented to Edwin Zundel. In those documents, Edwin Zundel signed away legal rights he did not have. For example, Stephen Zundel testified he approached his father and asked for exclusive use of a particular combine. He testified he knew at the time Edwin Zundel signed the agreement the Challenger CH670 combine was half owned by Loren Zundel and half owned by Donald Zundel's estate. Stephen Zundel also testified about a farm lease that Edwin Zundel signed as the personal representative of Donald Zundel's estate while he was at the Edgeley nursing home. He testified he later learned Edwin Zundel already entered into a lease with Richard Zundel for a portion of that farmland.

[¶24] Stephen Zundel also testified about two agreements Edwin Zundel signed giving him exclusive use of certain property in Donald Zundel's estate. Stephen Zundel testified he "had a right to a third use" of the property of Donald Zundel's estate. Therefore, Edwin Zundel signed agreements contrary to everyone's understanding on the estate property. This evidence supports the district court finding that Edwin Zundel signed every document Stephen

7

Zundel put in front of him as a result of undue influence or a lack of understanding of what the documents actually were. This includes the bill of transfer.

[¶25] The evidence supports the district court finding of undue influence and therefore was not clearly erroneous.

B

[¶26] Stephen Zundel argues the district court improperly admitted hearsay evidence because it went to the truth of the matter asserted. Loren and Richard Zundel argue the district court properly admitted Edwin Zundel's statements "I didn't know" and "should be divided equally," under the "state of mind" exception.

[¶27] "Inadmissible hearsay statements are not competent evidence." *Schumacker v. Schumacker*, 2011 ND 75, ¶ 15, 796 N.W.2d 636; N.D.R.Ev. 802. "An exception to the hearsay rule allows '[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed. . . .'" *Id.* (citing N.D.R.Ev. 803(3)). "For a statement to be admissible under the state of mind or emotion exception to the hearsay rule, the declarant's statement must be contemporaneous with the mental or emotional state sought to be proven, there must be no circumstances suggesting a motive for the declarant to misrepresent his or her state of mind, and the declarant's state of mind must be relevant to an issue in the case." *Id.* (citing 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 803.05[2] (2nd ed. 2011)). "Under this exception, statements may not be offered to prove the truth of the underlying facts, but only to show the declarant's state of mind or emotional condition." *Id.*

[¶28] "When reviewing decisions to admit evidence, this Court applies an abuse of discretion standard." *Spitzer v. Bartelson*, 2009 ND 179, ¶ 12, 773 N.W.2d 798 (citing *In re J.S.L.*, 2009 ND 43, ¶ 18, 763 N.W.2d 783). "The

district court abuses its discretion only when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination." *Id.* at ¶ 18 (citing *State v. Schmidkunz*, 2006 ND 192, ¶ 15, 721 N.W.2d 387).

[¶29] This Court has adhered to the principle that,

> "In the trial of a nonjury case, it is virtually impossible for a trial judge to commit reversible error by receiving incompetent evidence, whether objected to or not. An appellate court will not reverse a judgment in a nonjury case because of the admission of incompetent evidence, unless all of the competent evidence is insufficient to support the judgment or unless it affirmatively appears that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made."

*Tallackson Potato Co., Inc. v. MTK Potato Co.*, 278 N.W.2d 417 (N.D. 1979).

[¶30] Here, the district court stated Edwin Zundel's statement, "I don't know" showed that he did not understand what he did or was simply pressured to sign. To the extent the district court considered the statements to determine Edwin Zundel's ability to understand the transaction they were properly admitted. Assuming without deciding the district court improperly considered hearsay evidence, other evidence supports the district court finding of undue influence. Rule 61, N.D.R.Civ.P., states, "[u]nless justice requires otherwise, no error in admitting or excluding evidence . . . is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order." Stephen Zundel fails to establish he is prejudiced by the admission of these statements because other competent evidence as described above is sufficient to support the judgment.

IV

[¶31] Stephen Zundel argues the district court erred when it quashed the post-trial subpoena served on the nursing home to investigate claims that Stephen Zundel inflicted bruises on Edwin Zundel because nothing in Rule 45 of the North Dakota Rules of Civil Procedure forbids such a subpoena. Loren and

9

Richard Zundel argue the district court did not err in quashing Stephen Zundel's post-trial subpoena because there were no proceedings outstanding where further discovery would be warranted.

[¶32] The subpoena requested "any and all documents, records, reports and evidence, regarding the activity of and care of Edwin Zundel from the date of admission through the date of death, June 25, 2015, including but not limited to: a. Medical Records; b. Nurses notes; c. All Admission notes . . . ." The district court quashed the subpoena, stating, "[t]here are no issues remaining to be determined, and the subpoena, therefore, is improper."

[¶33] "A district court has broad discretion regarding the scope of discovery, and its discovery decisions will not be reversed on appeal absent an abuse of discretion." *Inv'rs Title Ins. Co. v. Herzig*, 2010 ND 169, ¶ 38, 788 N.W.2d 312 (citing *Martin v. Trinity Hosp.*, 2008 ND 176, ¶ 17, 755 N.W.2d 900). "We review the district court's denial of an order to compel discovery and for subpoenas duces tecum for an abuse of discretion." *Id.* "The district court abuses its discretion only when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination." *Martin,* at ¶ 17.

[¶34] Here, under the September 19, 2018 scheduling order, discovery requests needed to be served no later than November 29, 2018. The subpoena was issued on August 27, 2019, long after the November 29, 2018, deadline. Further, the case already had been decided and was supported by multiple findings other than the alleged bruising found on Edwin Zundel. Therefore, the court did not abuse its discretion when it quashed the post-trial subpoena.

V

[¶35] We have considered the remaining issues and arguments and conclude that they are either unnecessary to our decision or without merit.

10

## VI

[¶36] We affirm the district court judgment finding the bill of transfer is void as a result of Stephen Zundel's undue influence over Edwin Zundel. The court did not abuse its discretion when it quashed a subpoena after discovery was concluded. Because judicial bias was not raised in the district court, we decline to address it for the first time on appeal.

[¶37]  Daniel J. Crothers
      Jerod E. Tufte
      Lisa Fair McEvers
      Gerald W. VandeWalle
      Jon J. Jensen, C.J.